IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONSTRUCTURE[1] MANAGEMENT, INC.,   :

    Plaintiff,              :

v.                       :
                                Civil Action No. GLR-16-0284
BERKLEY ASSURANCE COMPANY,   :
et al.,
                       :

    Defendants.

                       :

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Berkley Assurance Company's ("Berkley") Motion to Dismiss (ECF No. 11) and Defendant StarStone National Insurance Company's ("StarStone")[2] Motion to Dismiss (ECF No. 14). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will convert Berkley's Motion in part to a motion for summary judgment and deny in part Berkley's Motion. The Court will also deny StarStone's Motion.

---

[1] The Court will direct the Clerk to amend the case caption to reflect the proper spelling of "Constructure Management, Inc." as Plaintiff.

[2] StarStone was formerly known as Torus National Insurance Company.

## I.   BACKGROUND[3]

Plaintiff Constructure Management, Inc. ("Constructure") is a Pennsylvania corporation that provides construction management services.  In April 2013, Constructure executed a contract with Star Development Group, LLC to be a general contractor for the construction of a Homewood Suites hotel in Laurel, Maryland (the "Project").  This contract required Constructure to remedy nonconforming and damaged work that might occur during the Project.  Constructure then entered into a subcontract (the "Subcontract") with Integrated Building Systems, Inc. ("Integrated"), a Pennsylvania corporation, for structural steel and rough carpentry work on the Project, which was scheduled to begin in June of 2013 and end by November 2013.

The Subcontract required Integrated to maintain commercial general liability insurance coverage, naming Constructure, among others, an additional insured.  Integrated obtained an insurance policy from Berkley (the "Policy").  The Policy named Integrated as a beneficiary and described Integrated's location with an address in Havertown, Pennsylvania.  The Policy, effective between November 2013 and 2014, contained a per occurrence limit of $1 million and a general aggregate limit of $2 million. Integrated obtained a second policy from StarStone (the

_____

[3] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

"Umbrella Policy").  The Umbrella Policy provided coverage above the Policy in the amount of $4 million.

Constructure alleges that during the completion of the Project, Integrated and its subcontractors (collectively, "the Subcontractors") negligently performed their work, causing property damage.  Constructure repaired the damage and completed the Project, but suffered substantial monetary losses as a result of paying for the repairs.  Constructure submitted an insurance claim to recover the cost of repairing the damage and completing the Project.  Constructure submitted the claim to Brandywine Insurance Advisors ("Brandywine"), who Constructure states is an agent for Berkley and StarStone in Pennsylvania. Constructure alleges Berkley and StarStone failed to pay and ignored the claim.

In October 2014, Constructure filed suit in the Circuit Court for Howard County, Maryland against Aegis Security Insurance Company ("Aegis"), who Constructure alleged was the surety of Integrated for the Project.[4]  In the Howard County case, Constructure alleged Aegis breached its performance bond obligations by failing to perform Integrated's subcontractual

---

[4] Generally, a court may not consider extrinsic evidence at the 12(b)(6) stage.  The court may, however, "properly take judicial notice of matters of public record." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  Matters of public record include "items appearing in the record" of a state court case. Bowden v. Agnew, No. 12-1237, 2013 WL 3545507, at *3 n.2 (M.D.N.C. July 11, 2013) (citation omitted).

duty to process the insurance claim.  Aegis then filed a third-party complaint against Integrated seeking indemnification and contribution.   On February 3, 2016, Constructure and Aegis dismissed all their claims against each other, with prejudice.[5] On February 24, 2016, the circuit court granted Constructure's motion for summary judgment, dismissing Integrated's claims. The circuit court concluded Integrated assigned all of its rights against Constructure to Aegis under their agreement of indemnity.   Constructure subsequently dismissed its claims against Integrated without prejudice.

On February 1, 2016, Constructure filed the present suit against Defendants.  (ECF No. 1).  In its three-count Complaint, Constructure seeks declaratory judgments (Count I) and alleges breaches of contract (Counts II and III) against Berkley and StarStone, respectively.  On March 15, 2016, Berkley filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) (ECF No. 11), and the following day, StarStone filed a Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) (ECF No. 14).  The Motions were fully briefed as of May 11 and May 20, 2016, respectively.  (ECF Nos. 19, 20, 24, 28).

---

[5]  Earlier, in June 2014, Constructure also filed suit against Aegis in the Circuit Court for Prince George's County, Maryland.  No other pleadings or motions were filed by either party, and the Circuit Court dismissed the case on November 5, 2014.

## II.   DISCUSSION

**A.   <u>Standards of Review</u>**

### 1.   Rule 12(b)(6)

Both Berkley and StarStone move to dismiss the Complaint under Rule 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish

each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd sub nom.</u>, <u>Goss v. Bank of Am., NA</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs of Davidson Cty.</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

**2.    Rule 12(b)(7)**

Berkley also moves to dismiss the Complaint under Rule 12(b)(7) for failure to join a necessary party under Rule 19.[6] Rule 12(b)(7) motions require a two-step inquiry. First, the

---

[6] Rule 19 states, in pertinent part, that a party is necessary if (A) "the court cannot accord complete relief among existing parties" without the absent party, or (B) the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence may" either (i) "impede the person's ability to protect the interest" or (ii) subject the current parties "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."

court must determine "whether a party is necessary to a proceeding because of its relationship to the matter under consideration pursuant to Rule 19(a)." Owens-Ill., Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999) (quoting Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917–18 (4th Cir. 1999)) (internal quotation marks omitted).  If the absent party is necessary, it must be ordered into the action so long as joinder does not destroy the court's jurisdiction.  Id. Second, "[w]hen a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed."  Id.

Although Rule 12(b)(7) permits dismissal, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result."  Id. at 441; see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc., 210 F.3d 246, 250 (4th Cir. 2000) ("Dismissal of a case [for nonjoinder] is a drastic remedy . . . which should be employed only sparingly." (quoting Teamsters, 173 F.3d at 918)).  The burden is on the moving party to "show that the [entity] who was not joined is needed for a just adjudication."  Am. Gen. Life & Accident Ins.

<u>Co. v. Wood</u>, 429 F.3d 83, 92 (4th Cir. 2005) (quoting 7 Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 1609 (3d ed. 2001)) (internal quotation marks omitted).

**B.   <u>Analysis</u>**

   **1.   Berkley's 12(b)(7) Motion**

   Berkley argues Constructure's Complaint warrants dismissal because Integrated and Aegis are necessary parties under Rule 19(a)(1)(B).  The Court disagrees for two reasons.

   First, for Berkley to succeed under Rule 19(a)(1)(B), Berkley must show that Integrated and Aegis "claim[] an interest relating to the subject of the action."  <u>See also</u> <u>Buffkin v. Maruchan, Inc.</u>, No. 1:14CV3, 2015 WL 860859, at *3 (M.D.N.C. Feb. 27, 2015) ("Another factor dissuading this court from joining [the absent person] is that [he] has not thus far claimed any interest in the present action" (footnote omitted)); <u>Am. Gen. Life & Acc. Ins. Co. v. Wood</u>, 429 F.3d 83, 93 (4th Cir. 2005) (holding that the missing person "had not claimed an interest in the federal action, and therefore, joinder was not required").  Berkley fails to provide any indication that either Integrated or Aegis has claimed any interest relating to the present action.[7]   Thus, Berkley's argument fails under Rule 19(a)(1)(B).

_____

   [7] It is clear that Aegis is aware of the present action.  On March 14, 2016, Berkley filed suit against Constructure,

Second, the failure of Integrated or Aegis to claim any interest related to this case supports the absence of proof under the second prong of Rule 19(a)(1)(B). Berkley argues there is a possibility of having inconsistent obligations if Integrated and Aegis are not joined. (See, e.g., Berkley's Mot. Dismiss at 14–15, ECF No. 11-1) (". . . Berkley could face separate and competing claims for the same policy limits . . ." (emphasis added)). But Rule 19(a)(1)(B) requires a "substantial risk" of inconsistent obligations for joinder, and Berkley merely "theoriz[ing] the possibility" that it will face inconsistent obligations from Integrated and Aegis is insufficient. Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir. 1980); see also Dickson v. Morrison, No. 98-2446, 1999 WL 543230 at *5 (4th Cir. 1999) ("[M]ere speculation that the absent shareholders could initiate suits resulting in Appellants facing inconsistent obligations did not require joinder of these shareholders in [the] motion.").

---

Integrated, and Aegis for declaratory relief regarding questions of insurance coverage in the United States District Court for the Eastern District of Pennsylvania. (See Berkley's Mot. Dismiss Ex. H, ECF No. 11-11). In that case, Aegis filed a motion to dismiss premised on the present action already being underway. (Pl.'s Opp. Berkley's Mot. Dismiss Ex. 4, ECF No. 19-4). In addition, Berkley's complaint against Integrated in that case references the present action, suggesting Integrated is aware of it, too. (Berkley's Mot. Dismiss Ex. H).

The Court concludes that any possibility of inconsistent obligations is speculation at best. The Court, therefore, will deny Berkley's Motion.

**2. Berkley's 12(b)(6) Motion**

Next, Berkley argues Constructure fails to state a claim upon which relief can be granted because Constructure has never been found liable to pay damages for the losses the Subcontractors caused. At this point, the Court cannot conclude whether Constructure states a claim because there is insufficient information to determine the lex loci contractus.

This Court has original jurisdiction over this matter based only on diversity jurisdiction. It is axiomatic that federal courts exercising diversity jurisdiction over a matter "apply the choice of law rules of the forum state." CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (citation omitted). In Maryland, the doctrine of lex loci contractus applies when interpreting contracts. See Allstate Ins. Co. v. Hart, 611 A.2d 100, 101 (Md. 1992). Under this doctrine, the court applies the substantive law of the state where the contract was made to determine its validity and construction. Id. Normally, "a contract is made where the last act necessary to make the contract binding occurs." Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of

Pittsburgh, Pa., 893 F.Supp.2d 715, 725 (D.Md. 2012) (citation omitted).

In the insurance context, "delivery of the policy and payment of the premium are ordinarily the last acts necessary to make an insurance policy binding." Id. (citation omitted).[8] Courts look at the payment of the first premium. See, e.g., Mut. Life Ins. Co. v. Mullen, 69 A. 385, 387 (Md. 1908) ("[A]s the first premium on the policy was paid in this State by a citizen of this State, and the policy delivered here, . . . it is a Maryland contract and . . . governed by Maryland laws." (emphasis added)).

Courts require "concrete evidence" to determine where the delivery of the policy and payment of the premium took place. IFCO Sys. N. Am., Inc. v. Am. Home Assur. Co., No. WMN-09-2874, 2010 WL 1713866, at *3 (D.Md. Apr. 27, 2010). When the parties only offer "assumptions and guesses" about the lex loci contractus of the policy, courts must look at matters outside the pleadings, and, accordingly, convert the motion to dismiss to a motion for summary judgment on that issue. Id. at *3-4.

Berkley argues Pennsylvania is the lex loci contractus because (1) the Policy lists a Pennsylvania corporate address

---

[8] In addition, where an insurance policy provides an express provision regarding the necessity of a countersignature, that countersignature becomes the "last act necessary to effectuate the policy." Id. at 725-26 (citations omitted). Here, the Policy does not appear to require a countersignature.

for Integrated, and (2) Integrated made a $6,000 payment in Pennsylvania. Berkley highlights that the Policy lists Integrated's Pennsylvania corporate address, but Berkley assumes that it delivered the Policy to this address.[9] In IFCO Systems, this Court rejected the same argument -- that the policy's lex loci contractus was Texas because the policy lists a Texas corporate address for the insured -- and instead converted the insurance company's motion to dismiss to a motion for summary judgment to look at information outside the pleadings. 2010 WL 1713866, at *3-4. While Constructure points out Berkley's assumption, it, too, fails to offer any evidence that Berkley delivered the Policy in Maryland or elsewhere.

There are also insufficient allegations for the Court to determine where payment of the first premium occurred. Berkley attaches Integrated's November 2013 monthly operating report, taken from Integrated's bankruptcy filings.[10] The report shows

---

[9] At this stage in the litigation, the Court may consider documents referred to and relied upon in the Complaint, "even if the documents are not attached as exhibits." Coulibaly v. J.P. Morgan Chase Bank, N.A., No. DKC 10-3517, 2011 WL 3476994, at *6 (D.Md. Aug. 8, 2011) (quoting Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001) (internal quotation marks omitted). Here, the Complaint alleges that Berkley executed the Policy with Integrated. (Compl. ¶ 9). Accordingly, because the Complaint refers to, and relies on, the Policy, the Court will consider it at this stage.

[10] As noted in note 4 supra, the Court may take judicial notice of matters of public record at the Rule 12(b)(6) stage. Bankruptcy filings under Chapter 11 of the Bankruptcy Code are public records. See 11 U.S.C. § 107(a).

that in November 2013, Integrated wrote a $6,000 check from a bank account with a Pennsylvania address, made payable to Berkley and StarStone's insurance agent Brandywine, a Pennsylvania entity. (Berkley's Reply Pl.'s Opp. Ex. B at 10, ECF No. 28-3). But there are no allegations before the Court supporting when Berkley delivered the Policy. It is not clear, therefore, whether this November 2013 payment constituted the first payment of the premium. Thus, there is no support for where Berkley delivered the Policy to Integrated and where Integrated paid the first premium.

Constructure argues that even if the <u>lex loci contractus</u> was Pennsylvania, Maryland law would nonetheless apply under the doctrine of <u>renvoi</u>. The Court disagrees.

When the <u>lex loci contractus</u> doctrine requires the court to apply the law of a foreign jurisdiction, Maryland courts can utilize the limited <u>renvoi</u> exception to determine whether the foreign jurisdiction would apply Maryland law. <u>Am. Motorists Ins. Co. v. ARTRA Grp., Inc.</u>, 659 A.2d 1295, 1304 (Md. 1995). In such cases, the court may apply Maryland law notwithstanding the doctrine of <u>lex loci contractus</u>. Under a "limited <u>renvoi</u> exception," Maryland courts "avoid the irony of applying the law of a foreign jurisdiction when that jurisdiction's conflict of law rules would apply Maryland law." <u>Id.</u> In such a situation, Maryland courts apply Maryland substantive law to agreements

13

entered in foreign jurisdictions, notwithstanding the lex loci contractus doctrine.  Id.  This occurs when (1) Maryland has at least a "substantial relationship" to the contract issue presented, and (2) the state of the the lex loci contractus would not apply its own substantive law, but instead would apply Maryland substantive law to the contract issue.  Id.

The renvoi exception would not change the choice of law to Maryland because Maryland has an insufficient relationship to the contract issue under renvoi's first prong.  Constructure contends that under the first renvoi prong, Maryland has a substantial relationship to the contract issue because the Project took place in Maryland.  In Francis v. Allstate Insurance Co., even though the events underlying the insurance coverage dispute took place in Maryland, the United States Court of Appeals for the Fourth Circuit defined the contract issue as whether the insurance company "had a duty to defend [the plaintiffs] based on the terms of a contract that was made in California."  709 F.3d 362, 369 n.6 (4th Cir. 2013).  Because Maryland had "virtually no relationship" to that contract issue other than the fact that the underlying events that "triggered" attempted enforcement of the insurance policy "happened to take place in Maryland," the Fourth Circuit found renvoi inapplicable.  Id.  Here, if the parties entered into the Policy in Pennsylvania, Maryland has no relationship to this Policy

coverage dispute, other than the underlying events triggering Constructure's attempted enforcement of the Policy taking place in Maryland.   Thus, the limited _renvoi_ exception is inapplicable.

In sum, the Court concludes there is insufficient information to determine the _lex loci contractus_.   The Court requires more factual development to determine the choice of law.   The Court, therefore, must convert Berkley's Motion to Dismiss for Failure to State a Claim to one for summary judgment on this issue.[11]   Berkley, as the insurer and party that presumably has access to this additional information, will be granted twenty days from the date of entry of this Court's Memorandum Opinion to file a supplemental brief regarding the place of the Policy's delivery and first premium payment, and any additional information and argument in accordance with this Court's Memorandum Opinion.   Any opposition or reply will be

---

[11] Rule 12(d) provides:
If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.   All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.
The Fourth Circuit has defined "reasonable opportunity" as requiring courts to give all parties "some indication . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." _Gay v. Wall_, 761 F.2d 175, 177 (4th Cir. 1985) (internal citations omitted).

filed in accordance with the deadlines set forth in Local Rule 105.2(a).

### 3.   StarStone's 12(b)(6) Motion

Next, the Court will deny StarStone's Motion under 12(b)(6) for three reasons:  (1) Constructure is not required to plead that it met conditions precedent; (2) Constructure is permitted to plead inconsistent damage amounts; and (3) Constructure is not required to have an underlying tort action to have standing.

First, StarStone argues that the Court should dismiss Constructure's Complaint because Constructure has not pled that the Policy's conditions precedent were met.  Specifically, StarStone argues the Complaint is deficient because it does not state that Constructure notified StarStone of its claims. The Court rejects this argument.

In a contract dispute, plaintiffs are not required to expressly plead satisfaction of a condition precedent to allege a breach-of-contract claim.  United States v. Clark Constr. Grp., LLC, No. PJM 15-2885, 2016 WL 4269078, at *6 (D.Md. Aug. 15, 2016).  Rather, "failure to satisfy a condition precedent is ordinarily considered an affirmative defense."  Id.  "An affirmative defense is usually not appropriate at the motion to dismiss stage unless the facts necessary to establish it are available on the face of the pleadings."  Id.  As a result, courts have "rejected defendants' premature attempts to dismiss

16

a lawsuit based on the presence of conditions precedent clauses when crucial facts have not yet been developed." Id. (citing Howard Robson, Inc. v. Town of Rising Sun, No. ELH-14-2003, 2015 WL 424773, at *12-13 (D.Md. Jan. 30, 2015).

Instead, "an allegation is sufficient if it alleges that the claimant 'has at all times performed all its proper and legitimate duties and obligations under its contract." Id. (quoting Howard Robson, Inc. v. Town of Rising Sun, No. ELH-14-2003, 2015 WL 424773, at *12 (D.Md. Jan. 30, 2015)).  Here, Constructure alleged that it "has performed all of its obligations under the terms, covenants, and conditions of the Umbrella Policy." (Compl. at ¶¶ 44-45, ECF No. 1).  Thus, the Court concludes Constructure has alleged sufficient facts to support its contract claims.[12]

Second, StarStone argues that the Complaint should be dismissed due to inconsistency between the Counts.  StarStone points out that Count Three, brought against StarStone, does not

---

[12] For the foregoing reasons, the Court also rejects StarStone's argument that the Complaint is deficient because the attached exhibits only show that Constructure notified Brandywine of its claims, or show that the exhibits are otherwise inconsistent.  Because Constructure is not required to expressly plead satisfaction of a condition precedent -- that Constructure notified StarStone -- it necessarily follows that Constructure is also not required to attach exhibits demonstrating it notified StarStone.  "The purpose of a Rule 12(b)(6) motion," furthermore, "is to test the sufficiency of a complaint," not to "resolve contests surrounding . . . the applicability of defenses." Edwards, 178 F.3d at 243-44 (quoting Martin, 980 F.2d at 952).

specify a requested damage amount. Meanwhile, Count Two, against Berkley, seeks damages of at least $550,000. Such an award would not trigger StarStone's umbrella coverage requirement under the Policy. StarStone's argument, however, overlooks Rule 8(d)(3), which provides, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." To the extent that Count Two is inconsistent with Count Three,[13] Rule 8(d)(3) permits Constructure to assert inconsistent damage amounts against Berkley and StarStone.

Third, StarStone argues that the Complaint should be dismissed because Constructure lacks standing to seek declaratory relief due to the absence of a tort claim. The Court disagrees.

StarStone relies on Washington Metropolitan Area Transit Authority v. Regina Queen ("WMATA"), which holds that "[a]n injured tort plaintiff is not excused from obtaining a judgment against the insured tortfeasor before suing the liability insurer." 597 A.2d 423, 427 (Md. 1991).[14] The court in WMATA,

---

[13] It is not clear that the Counts are inconsistent to begin with. Count Two states that Constructure lost "not less" than $550,000, leaving room for the possibility that it had enough losses to trigger StarStone's umbrella coverage. Further, StarStone offers no authority, and the Court finds none, requiring the Complaint to specifically plead losses that sufficiently trigger umbrella coverage in cases involving coverage disputes.

[14] Unlike Berkley, StarStone does not address whether Maryland law applies, and relies on Maryland cases throughout

however, contemplated an injured tort plaintiff who was a different party than the insured. See id. at 425-26 ("Under this Court's decisions, a tort claimant may not maintain a direct action against the defendant tortfeasor's liability insurer until there has been a determination of the insured's liability in the tort action." (emphasis added)).

Put differently, WMATA's requirement of an underlying tort action does not apply when a plaintiff brings a declaratory judgment action simply to determine insurance coverage, rather than when a tort claimant brings suit against the liability insurer to determine the insured's tort liability. See Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658 (Md. 1997) ("Maryland public policy ordinarily does preclude an injured claimant from initially bringing a direct action against the alleged tortfeasor's liability insurer to litigate the matter of the insured's tort liability, as distinguished from a declaratory judgment action concerning separate and independent policy coverage issues." (emphasis added)).

Here, the injured tort plaintiff, Constructure, is also insured under the Policy; Constructure seeks declaratory relief

---

its Motion. Thus, the Court will apply Maryland law to this issue irrespective of the conflict of laws dispute between Berkley and Constructure. See Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage' [sic].").

only to determine policy coverage. StarStone argues Constructure's claim is actually to determine tort liability -- in addition to policy coverage -- because Constructure seeks damages "reliant" on its assertion of the Subcontractors' negligence, and "intertwines the two" throughout the Complaint. (StarStone's Mot. Dismiss at 9, ECF No. 14-1). To avoid <u>WMATA</u>'s requirement of an underlying tort action, Constructure bringing its claims against StarStone, rather than the Subcontractors, is nevertheless sufficient. <u>See</u> <u>Palmer v. Audi of Am., Inc.</u>, No. GJH-14-03189, 2015 WL 222127, at *3 (D.Md. Jan. 13, 2015) (holding an underlying tort action was not required because the plaintiff "did not bring suit against Defendants to resolve their tort liability; rather, she sought a declaratory judgment to resolve an insurance policy coverage dispute"). Thus, <u>WMATA</u>'s requirement of an underlying tort action is inapplicable.

In sum, the Court concludes that Constructure (1) is not required to plead that it met conditions precedent, (2) is permitted to plead inconsistent damage amounts, and (3) is not required to have an underlying tort action for standing. Accordingly, the Court will deny StarStone's Motion to Dismiss.

### III. CONCLUSION

For the reasons stated above, the Court will CONVERT Berkley's Motion (ECF No. 11) in part to a motion for summary

judgment and DENY in part Berkley's Motion.   The Court will CONVERT Berkley's Motion to a motion for summary judgment on the issue of the <u>lex loci contractus</u> of the Policy.   Berkley's supplemental brief is due within twenty days of the date of this Memorandum Opinion.   The Court will DENY the Motion to the extent Berkley seeks dismissal under Rule 12(b)(7).   The Court will also DENY StarStone's Motion (ECF No. 14).   A separate Order follows.

Entered this day 2nd of March, 2017

/s/
_____
George L. Russell, III
United States District Judge
